UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05CR118 JCH |
| ) | |
| FRED FINCHER, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the pretrial motions on June 1, 2005 .

**#11 Defendant's Motion to Suppress Evidence and Statements**

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Chris Mateja is a detective with the St. Charles County Sheriff's Office. He is currently assigned to the computer crime unit, and in that capacity investigates the use of computers to store and transfer child pornography.

On about July 14, 2004, he was contacted by a detective from the Foristell, Missouri police department who gave him information about a person in Foristell, Missouri, who may be receiving and transmitting child pornography. The information was that the Foristell police had been contacted by officers of the Garden City, Kansas police department. They were informed by Garden City that Garden City was investigating a person who they ascertained stored child pornography on his

computer. Their investigation revealed that the person in Garden City was corresponding with a person via e-mail in Foristell, Missouri, and had transferred photographs which may have contained child pornography to the person in Foristell. The person in Foristell used the e-mail account [K9to2001@yahoo.com.](mailto:K9to2001@yahoo.com) After receiving this information, Mateja opened a case file on this matter and asked the Yahoo company to give him whatever subscriber information they had on this account. Yahoo informed Mateja that their records showed that the account had been opened by a Fred Fincher in Foristell, Missouri. Mateja then checked the records of the Department of Revenue of the State of Missouri, and determined that Fincher's current address was in Foristell, Missouri.

Mateja decided to go to Fincher's home to investigate this matter further by asking Fincher questions about the information that had been received from Garden City. Pursuant to this, at about 1:40 p.m. on July 22, 2004, Mateja and another detective went to Fincher's house in Foristell, Missouri. They eventually knocked on the side door of the house, and when Fincher opened the door, Mateja introduced himself to Fincher as a detective with the St. Charles County Sheriff's Department, and asked the Defendant if he could come into the house. The Defendant invited Mateja into the house, and Mateja told the Defendant that he was conducting an investigation into child pornography, and had some questions for the Defendant about this investigation. The Defendant told Mateja that he would answer questions, and invited the officers to sit down at his dining room table with his wife, Alice, who was also in the room. As the four of them sat down at the dining room table, Mateja quietly asked Mrs. Fincher if there was anywhere else in the house that the Fincher's granddaughters (who were in the same room as the detectives and the Finchers) could go so apparently they would not have to hear questions about child pornography. Mrs. Fincher had the girls go into the next room to play.

During the interview, Mateja asked questions of the Defendant at the dining room table, and the Defendant's wife was present for the entire interview along with the second detective. Mateja told the Defendant he was investigating possible child pornography sent to the Defendant from Garden City, Kansas, over the internet to an e-mail account designated K9to2001@yahoo.com The Defendant said that the K9 account was his e-mail account, and told the detective he had received child pornography over the internet at that account, and at the present time, had fifty to seventy-five pictures depicting child pornography on his computer in the bedroom at the house. He said he traded child pornography over the internet, and told Mateja in what computer file he stored the illegal images. He told Mateja he was the only person who used the computer.

After the Defendant told Mateja he was storing child pornography on the computer in the house, Mateja asked the Defendant if he could search the computer. The Defendant told Mateja he could search and again told Mateja where the computer was located and the file in the computer in which the child pornography could be located. Mateja then gave the Defendant a consent to search form to search and seize the computer. After Mateja explained the form to the Defendant, the Defendant read the form and signed the form. The form reads as follows:

> I, __Fred Fincher__, give my consent to: __Sgt. Chris Mateja__ and member of the RCCEEG, to search the property located at, or seized from: __232 Hwy. W, Foristell, MO 63348.__ Such permission to search is hereby given freely and voluntarily, and no force, threats, or other types of intimidation have been used to gain my consent in this matter. The property to be searched consists of (type and/or description of equipment): __Generic PC   Pentium II__, and a search of the data contained therein. It should be noted that I possess the legal authority to authorize a police search of the premises and/or property designated herein. I also release the seizing Officers and examining RCCEEG members of the responsibility of any possible accidental loss of data during the forensic examination.
>
> Signature:  __/s/ Fred Fincher__

The Defendant showed no reluctance or hesitancy in allowing the search of the computer, and no threats or promises of any type were made to the Defendant in order to obtain the consent to search.[1]

After obtaining the consent, Mateja went to the bedroom, disconnected the CPU unit, and took it to his car, storing it in the vehicle. After doing this, Mateja came back into the house and asked the Defendant if he would make a written statement by writing out what the Defendant had already told the detectives orally about the child pornography. The Defendant agreed to do so, and wrote out a short statement repeating much, but not all, of what he had orally told the detectives. No threats or promises were made to the Defendant at any time, and he was totally cooperative with the investigation and with Mateja. The interview was cordial and low-key, and the Defendant's movement around the house was not restricted in any way during the entire time that the officers were at the residence. The total length of time that the officers were at the residence was approximately thirty to forty minutes from the time they entered the house until the time they finally left. The Defendant asked what would happen as far as the investigation was concerned, and Mateja

---

[1] It should be noted that the Defendant's wife and the Defendant both testified that Sgt. Mateja said that if he needed a search warrant to search the computer, he could apply for one or get one or obtain one if necessary. His wife testified that she "believed" that he said this prior to the consent being signed. She stated that he did not say that he would get a search warrant, if no consent was given, and did not testify that the fact that Mateja could get a search warrant was linked to the consent. The wife also testified that the interview between her husband and Det. Mateja was cordial and friendly, and that no threats or promises were made to the Defendant. Given the above testimony and Sgt. Mateja's clear and unequivocal statement that he said **nothing** about obtaining a search warrant, and that the Defendant was "totally cooperative," the undersigned accepts Mateja's version and rejects the Defendant's. In doing so, the undersigned notes that prior to asking the Defendant for consent to use his computer, according to the testimony of Sgt. Mateja, the Defendant, and the Defendant's wife, the Defendant had already admitted to Mateja that he had at least fifty to seventy-five images of child pornography which he obtained over the internet on his computer and which were stored in the house. Thus, it is clear that had Mateja needed a search warrant, he very likely could have obtained one.

gave the Defendant his card, and told him the information would be turned over to the prosecutor for the prosecutor's decision. Mateja told the Defendant if he had any questions he could call Mateja at the number on the card. Mateja and the other detective then left and did not arrest the Defendant.

**Conclusions of Law**

A. Statements of the Defendant

Based on the above findings, the undersigned concludes that the statements made by the Defendant were non-custodial statements voluntarily made to the officers, and should not be suppressed. In determining whether the Defendant was in custody, the court must consider whether under the totality of the circumstances, the officers deprived the Defendant of his freedom in any significant way and if a reasonable person under similar circumstances would believe that he was under arrest or that his movement was significantly restricted. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 468 U.S. 420 (1984).

In United States v. Sutera, 933 F.2d 641 (8th Cir. 1991), F.B.I. agents executed a search warrant on the Defendant's apartment, Defendant's car, and on the Defendant's person, and thoroughly searched the Defendant's person and frisked him for weapons. His movement was also somewhat restricted in his apartment in that he could not go into areas that were being searched. In holding that the Defendant was not in custody, the court stated at follows:

> It is also relevant that Sutera was 'on his own turf.' Except for the brief period when Sutera and Burns drove to get the address book, Sutera was interviewed in the apartment that he was occupying. While a person may be deemed to be in custody even in his own home, it is not the type of coercive setting normally associated with custodial interrogation.
>
> Finally, we feel it is very important that the officers did not contemplate arresting Sutera either before or after the interview. At the evidentiary hearing Agent King testified why Sutera was not given Miranda warnings, stating '[Sutera] was not in custody. He was not under arrest. We did not contemplate an arrest.'

5

United States v. Sutera, 933 F.2d 641, 647 (8th Cir. 1991).

The undersigned concludes that the same factual situation exists in the case now at bar. The officers interviewed the Defendant in his home, and his movement was not restricted in any way during the entire process. The Defendant invited the officers into the house, and agreed to answer their questions. The interview took place at the Defendant's dining room table with his wife present, and only two officers present in the room both dressed in civilian clothing. Further, the officers left the house at the end of the interview without arresting the Defendant, and left their card with him so that they could answer any questions that he might have about the progress of the case. Further, although the agents may have conveyed the view that they needed to talk to the Defendant, they used no force, threats, coercion, or duress to restrain the Defendant or to induce him to talk to them. They further made no promises to the Defendant of any type to induce him to consent to an interview. The officers described the Defendant's attitude as "very cooperative."

Thus, the undersigned concludes, as did the court in Sutera, that the Defendant's freedom of movement was not restricted in any significant way, and that a reasonable person would not believe that he was under arrest by sitting in his own dining room with his wife present during the entire interview. Thus, the undersigned concludes that the Defendant's statements were non-custodial, and it was not required that the Defendant be given his Miranda warnings. See Berkemer v. McCarty, supra. The fact that the Defendant may have been a suspect in the crime does not trigger any right on his part to be given Miranda warnings. California v. Beheler, 463 U.S. 1121 (1983). Further, it is clear that the Defendant's statements were voluntarily made, and that his rights were not violated in any manner by the police officers. As stated, the Defendant evidenced a totally cooperative attitude in cooperating with the officers by talking to them and in allowing them to seize the computer

so that they could search it for child pornography.  He freely told the agents that he had child pornography on the computer and where it was located on the computer.  He was not promised anything nor was he threatened in any manner in order to obtain his statement or to induce him to talk to the agents.  Therefore, the undersigned concludes that based on the totality of the circumstances of the Defendant's questioning, the Defendant's statements to the officers were voluntarily made, and his free will was not overborne by anything that took place during the interview.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 467-75 (1966); <u>North Carolina v. Butler</u>, 441 U.S. 369, 374-75 (1979); <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986); <u>Moran v. Burbine</u>, 475 U.S. 412 (1985).

### B.  The Seizure of the Computer

Based on the above findings, the undersigned concludes that the seizure of the computer and the search of the computer were based on the voluntary consent of the Defendant, and were lawful.  To determine whether or not consent to search is voluntarily given, the totality of the circumstances surrounding the consent must be examined.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973); <u>United States v. Matlock</u>, 415 U.S. 164 (1974).  Among the factors used to determine whether consent is voluntary include: the degree to which the Defendant cooperated with police; whether the Defendant had been threatened in any way or promised anything; use or lack thereof of coercive police behavior to obtain the consents, and the length of any detention of the Defendant and the nature of the questioning.  Applying the above law to the present case, the undersigned concludes that the Defendant was not threatened in any way to obtain his consent nor was he promised anything.  As the undersigned noted in FN 1 above, the undersigned accepts the unequivocal testimony of Sgt. Mateja that he said **nothing** about obtaining a search warrant to the Defendant, and that the Defendant was totally cooperative, and showed no reluctance or hesitancy in allowing the search of

7

the computer. Further, Mateja unequivocally testified that no threats or promises of any type were made to the Defendant in order to obtain his consent, and that the Defendant was totally cooperative in all aspects of the investigation. Further, any consent which was requested of him was given after the Defendant orally admitted to Mateja that he had fifty to seventy-five images of child pornography on his computer that he obtained over the internet. Thus, it is clear that had Mateja needed a search warrant, he very likely could have obtained one. In addition, the signed consent which the Defendant admitted he signed stated, "No force, threats, or other types of intimidation have been used to gain my consent in this matter." Given the above record, the undersigned concludes and finds that no threats or other types of intimidation were used to gain the Defendant's consent and specifically accepts the testimony of Sgt. Mateja that he never mentioned the possibility of obtaining a search warrant, and rejects the Defendant and his wife's testimony to the contrary. As to the other factors, as stated, the Defendant was fully cooperative with the police; the Defendant was not subjected to any type of coercion; the Defendant was not detained for any period of time at all, and was, in fact, not in custody at the time the consent was given, and the nature of the questioning according to both the Defendant's wife and the officers was that the questioning was very low-key and cordial.

Therefore, the undersigned concludes that the consent to search the computer and the consent to the seizure of the computer was voluntarily given and was lawful. Therefore, images obtained from the computer should not be suppressed based on a lack of consent or an illegal search or seizure of the computer.

**Conclusion**

Therefore, the Defendant's motion to suppress evidence and statements should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that (Doc. #11) Motion of Defendant to Suppress Evidence and Statements be **denied**.

Further, as to the motion to suppress, the parties are advised that they have eleven (11) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Finally,

The trial of this matter is set on **August 8, 2005 at 9 a.m.** before the Honorable Jean C. Hamilton, United States District Judge, Courtroom 16-North.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of June, 2005.